### JAMES McCANE v. THE STATE.

*No. 478.   Decided June 16.*

1. **Verdict—Impeachment of by Affidavits of Jurors.**—Upon grounds of public policy the rule is well settled that courts will not tolerate affidavits of jurors to impeach their verdicts. If ever admissible, they can only be allowed in an extreme case and under imperative necessity for the accomplishment of justice. Following Johnson v. The State, 27 Texas, 759.

2. **Same—Exception to the General Rule—Practice.**—See facts stated in the opinion, in connection with the affidavits of eight jurors impeaching their verdict, which are *held* to present an extreme case of exception to the general rule that such practice is not allowable; and where it is further *held*, that the court, having permitted the filing of the affidavits, should have set aside the verdict and imposed a fine for contempt upon the jurors making the affidavits.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

On a trial under indictment for the murder of one John F. Morris, in the county of Harris, on the 17th day of January, 1894, appellant was convicted of manslaughter, his punishment being affixed at a term of two years' imprisonment in the penitentiary.

In view of the disposition made of the case on this appeal, it is unnecessary to make a general statement of the case.

The matters pertaining to the action of the jurors impeaching their verdict are shown in the following affidavits filed in connection with the motion for a new trial:

"The State of Texas

"v.                                              No. 8176.

"James McCane.

"Now come W. N. Kidd, J. S. Dunlay, Geo. E. Dickey, Louis Kosse, E. A. Campbell, Joe Peschka, H. H. Kuhlman, and A. E. Schaeffer, who on oath say: That they, and each of them, were jurors at the trial of the above numbered and entitled cause, and while they have returned a verdict finding the defendant guilty of manslaughter, they do not believe [nor did they believe at the time of returning said verdict] that the defendant, under the evidence adduced before them, was guilty of any offense; that all of the above jurors except A. E. Schaeffer voted a number of times for not guilty, and it appearing that the jury would not be able to agree, and the said jurors being tired and worn out, and some of them sick, and fearing that they would have to be confined in the jury room during another night, as a compromise, and in order that they might go to their homes, did agree to the verdict of 'guilty of manslaughter,' and placed the punishment at two years; and the above jurors state to the court that their verdict was rendered without due reflection, and they feel that it is an injustice to the defendant; and they pray the court to grant the defendant a new trial.

                              "J. S. Dunlay,
                              "Louis Kosse,
                              "E. A. Campbell,
                              "Will N. Kidd,
                              "Hy. H. Kuhlman,
                              "Geo. E. Dickey,
                              "J. C. Peschka.

"I sign the above, excepting that portion included in the brackets.
                              "A. E. Schaeffer.

"Sworn to before me this the 18th day of April, A. D. 1894.
                              "Ingham S. Roberts,
                    "Notary Public in and for Harris County."

Afterwards these same jurors made the following affidavits, which were filed by the district attorney in opposition to the motion for new trial, in so far as the same was based upon the previous affidavits:

"The State of Texas

"v.                     In Criminal District Court of Harris County.

"James McCane.

"Now come the persons whose names are signed and appended hereto, and having been sworn, on their oaths say: We were jurors in the above numbered and entitled cause, and who signed and swore to a

statement which has been appended to a motion for a new trial by the defendant, and now say we did not understand the full import of said statement, and what we meant to say is: As citizens, we did not believe the defendant guilty; but as jurors, under the evidence adduced on said trial, and the law as given us in the charge by the court, we believed he was guilty of manslaughter, and so found by our verdict; and the verdict as rendered and read in open court was our verdict, and it was not true that we were coerced, as stated in said statement heretofore referred to.

"WILL N. KIDD,

"E. A. CAMPBELL,

"LOUIS KOSSE,

"J. C. PESCHKA,

"GEO. E. DICKEY,

"J. S. DUNLAY.

"At the time the verdict was rendered, I believed the defendant guilty, as rendered. But now, as a citizen, and having since then learned of the character, etc., of the deceased, Jno. F. Morris, I feel that I would have been more lenient to the defendant had I known then of the character, etc., of deceased. But I stand pat on my verdict as adduced by the evidence.          "A. E. SCHAEFFER.

"Sworn to and subscribed before me by each of the above named persons, on this the 24th day of April, A. D. 1894.

"ISAAC R. LINDLEY,

"Notary Public, Harris Co., Texas.

" At the time I agreed to the verdict I believed defendant guilty as I interpreted the law, but since then, and since the separation of the jury, and after due reflection, I changed my mind.

"H. H. KUHLMAN.

"Sworn to and subscribed before me this 24th day of April, A. D. 1894.          "ISAAC R. LINDLEY,

"Notary Public, Harris Co., Texas."

*Jones & Garnett* and *Lock McDaniel*, for appellant.—This defendant did not have a fair and impartial trial, in this, that although the jury which tried this defendant returned a verdict of guilty of manslaughter against this defendant and assessed the punishment at two years' confinement in the State penitentiary, yet said verdict was not fairly and impartially given, and was not rendered against the defendant because the jury believed that the defendant was guilty, but was rendered against this defendant for other and different reasons by eight of the jurors who tried said cause, which is shown by the voluntary affidavit

of eight of said jurors, setting forth the reasons why they rendered said verdict, and why said verdict was not an expression of their belief of defendant's guilt. The eight jurors making said affidavit were W. N. Kidd, J. S. Dunlay, George E. Dickey, Louis Kosse, E. A. Campbell, Joe Peschka, H. H. Kuhlman, and E. A. Schaeffer; all of whom except one, to wit, Schaeffer, in said affidavit state and say, that at the time they rendered said verdict they did not believe defendant guilty, and did not at the time of making said affidavit believe the defendant guilty; and say in said affidavit that their verdict was an injustice to to defendant, and that they did not believe from the evidence adduced before them that the defendant was guilty of any offense, and that all of said jurors, except Schaeffer, voted a number of times "not guilty;" and further say, that it appearing to them that said jury would not be able to agree, and that the said jurors above named being tired and worn out—some of them sick—and fearing they would have to be confined to the jury room during another night, as a compromise, and in order that they might go to their homes, did agree to the verdict of "guilty of manslaughter," and placed the punishment at two years in the penitentiary, and that said verdict was rendered without due reflection, and was not in fact a true expression of said jurors, and was not in fact their verdict; all of which is shown by the affidavit of said jurors attached to this defendant's motion for a new trial, and which is referred to and made a part of this assignment of error. The said jurors did afterwards make an affidavit, which is on file among the papers of this case, that as citizens they did not believe the defendant guilty, but as jurors they did believe him guilty; and in said affidavit denied that they were coerced to render a verdict; yet this defendant says that the affidavits of said jurors constitute such gross misconduct upon the part of said jury as shows that this defendant did not have a fair and impartial trial, and which entitles the defendant to a new trial.

The eight jurors before named made the affidavit attached to defendant's motion for a new trial. They never modified or changed it, except in their affidavit in contest of motion for a new trial, in which last affidavit they say, as citizens they believe defendant not guilty, but as jurors they believe him guilty, which we think constitutes a most wonderful juridical parodox. The jury are the citizens and the citizens are the jury—one and the same individuals, one and the same entity. Citizens who compose a jury, after having heard the evidence and tried the case, state on oath, that as citizens they consider the defendant not guilty, but as jurors he is guilty. The citizen is merged into the juror for one belief, and the juror transformed to the citizen for another belief. Will this court allow a conviction to stand, based on a verdict of a jury eight of whose members have and had a dual belief and opinion as to the defendant's guilt and innocence, one

belief as citizens, another as jurors? Is this the character of trial guaranteed to a citizen by the Constitution and laws of Texas? We are not unaware of the well-established rule that a jury can not impeach their verdict by their own affidavits as a general thing. But one of the statutory grounds for a new trial in Texas is, "when, from misconduct of the jury the court is of opinion that the defendant has not received a fair and impartial trial." "Such misconduct may be proved by the voluntary affidavits of a juror, and a verdict may in like manner be sustained by such affidavits." Kelly v. The State, 28 Texas Crim. App., 120.

The appellant has not had a fair and impartial trial. Eight of the jurors who sat on the case say so. This fact was made a ground in the court below for a new trial. The court denied the motion. The appellant comes here for redress. Shall his appeal be unheeded, and he be sent to the penitentiary, while two-thirds of the jury did not believe him guilty? We trust not.

*R. L. Henry,* Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at two years in the penitentiary.

It is only necessary to consider one question in the case. In his amended motion for a new trial, appellant insists that he did not have a fair trial on account of the misconduct of the jury. In support of this ground he filed with said motion the affidavit of *eight* of the jury who rendered the verdict, stating their verdict was an injustice to defendant and given without due reflection; that they had voted a number of times for a verdict of "not guilty," and finding no prospects of an agreement, being tired and worn out, and some being sick and fearing they would be kept together another night, they agreed to a compromise verdict for two years; that they do not now believe from the evidence that defendant is guilty; and *seven* of the jurors further swear they did *not believe defendant was guilty when they returned the verdict;* and all eight jurors join in asking a new trial for appellant.

In the affidavit filed by the State, and signed by the same jurors, they say, as jurors they believed him guilty, as citizens they did not.

In his valuable work on Trials, section 2618, Mr. Thompson says: "Upon grounds of public policy courts have almost unanimously agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach a verdict or to explain it, or show upon what grounds it was rendered, or that the juror misunderstood the charge or mistook the law. Nor is it admissible to show, by the oath of the juror, he did not agree to the verdict or consented to it to secure his discharge, or that the verdict was not the verdict of particular jurors." Such is the law in Texas, except as

controlled by article 777 of the Code of Criminal Procedure.    In John-son's case, 27 Texas, 759, where three jurors filed affidavits that they had misconstrued the law, the Supreme Court say:    "No case has yet occurred in this State wherein courts have tolerated such affidavits to impeach verdicts.    If ever admissible, they can only be allowed in an extreme case and under imperative necessity for the accomplishment of justice.    The rule rests upon the obvious ground that were it other-wise few verdicts would escape attack from jurors under influences that would be brought to bear upon them after their discharge by the court."

But, while such is the rule, we think the record before us presents such an exception as must necessarily arrest the attention and chal-lenge the consideration of any court.    This is not a case where the jurors claim to have misunderstood the law or evidence (Johnson's case, 27 Texas, 759), nor where two or three jurors come in and claim to have been coerced or intimidated (Boetge v. Landa, 22 Texas, 108); nor is there the slightest intimation of undue influence or persuasion in the case, but on the contrary it seems to have been the voluntary act of the jurors shortly after the rendition of the verdict confessing the injustice they were guilty of.    While under such influences referred to, two or more members of the jury might sign such an affidavit, it is difficult to believe that two-thirds of a jury sworn to render a true verdict would, from reasons of personal comfort, consent to a verdict against their oaths.    But their voluntary affidavit leaves the fact unquestioned, and shows this conviction was concurred in by a jury confessedly in-competent to sit upon the life or liberty of any one.    The distinction sought to be drawn between their duty as citizens and as jurors is un-worthy of consideration, and does not exist.    We may concede the impropriety of permitting such affidavits to be filed, yet, with them before us, it would be wrong to affirm the judgment.    It is not a case demanding a reversal because there is a mere probability, but a cer-tainty of injustice done.    We think the court erred in his disposition of the case.    It would have been more in consonance with the require-ments of justice and the dignity of the court to have promptly set aside the verdict, and imposed a heavy fine for contempt upon the jurors making the affidavits.    Boetge v. Landa, 22 Texas, 108.    Of the re-maining four jurors, one is attacked upon the ground of having formed an opinion as to the appellant's guilt which disqualified, and another juror is shown to have been convicted of a felony, but pardoned.    It is unnecessary to pass upon these questions so ably presented in the brief of counsel, as they may not arise in another trial.

The judgment is reversed and the cause remanded.

                                                *Reversed and remanded.*
Judges all present and concurring.