shows that deceased did not have the gun when he was shot.

A number of witnesses testify to all that defendant states he expected to prove by his brother, if he had testified to all that was stated in the application that it was expected to be proven by him. In fact, the material facts sought to be proven by the witness, as stated in the application, were not contested by the state's testimony, but admitted by the state's witnesses, and testified to by four or five of defendant's witnesses. In qualifying the bill, the court states: "This bill of exceptions is approved, with the qualification that wire was sent to the sheriff of Montgomery county (where the application claimed the witness could be found) to know why he had not returned the process for this witness, and why he had not brought this witness to court, to which the sheriff wired that he had received no process for said witness, had none, and that he knew where said witness was, and would bring him if wanted; that the witness was a brother of defendant, and the defendant could have produced him at the trial, if they had wanted to." Viewing the application in the light of the facts and the testimony on the trial, we do not think the court erred in overruling the application for a continuance.

2. There was no error in refusing to permit the defendant to prove the reputation of certain persons for "virtue and chastity." The court permitted the witnesses to testify that the reputation for truth and veracity was bad. This was as far as the defendant was entitled to inquire.

3. In bills of exceptions Nos. 4, 5, and 6 defendant complains of remarks of the district attorney. The court qualified these bills, and, as qualified, no error is presented. In addition, the appellant requested no charge in regard to these matters, and in the absence of a requested charge defendant cannot complain of objectionable remarks of the prosecuting attorney. Bailey v. State, 45 S. W. 708; Garner v. State, 24 S. W. 421; Matthews v. State, 41 Tex. Cr. R. 98, 51 S. W. 915; Leggett v. State, 65 S. W. 516.

4. In bill No. 3 appellant complains of a question asked by the state's attorney. The court states he sustained defendant's objection, and the state's counsel changed the form so it would not be objectionable. While the question was not proper, in view of the action of the court, it presents no reversible error.

5. There was no error in the court limiting in his charge the effect of the testimony of impeaching witnesses. It was proper he should do so.

6. The testimony in this case shows that, during the altercation between John Wooley and Grover Bean, deceased acted the part of peacemaker, while defendant's conduct added "fuel to the fire." Fifteen minutes after this difficulty was over, deceased started home with his family, and, when he had gotten about 30 steps from defendant, defendant or some one in his crowd made insulting remarks. Some words then ensued, when defendant shot deceased; deceased not being armed at the time he was shot. If a witness is to be believed, defendant, when leaving the ground, said, "I shot the d——n s——n of a b——h, and I wish I had got that d——n Grover Bean," evidencing a spirit that was not in consonance with his plea of self-defense.

Finding no reversible error in the record, the judgment is affirmed.

---

## BACON v. STATE.

(Court of Criminal Appeals of Texas. Feb. 8, 1911.)

1. CRIMINAL LAW (§ 1111*)—APPEAL—RECORD—CONFLICT IN RECORD.

Where an application for continuance states that it is the first application, but the judge, in approving the bill of exceptions to its refusal, states that it is the second application, the appellant, by accepting the bill of exceptions as allowed, is bound thereby.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2894–2896; Dec. Dig. § 1111.*]

2. CRIMINAL LAW (§ 614*)—CONTINUANCE—SUCCESSIVE APPLICATIONS.

Where a second application for continuance neither states that testimony can be procured from any other source known to the defendant nor that defendant has reasonable expectation of procuring it at the next term of the court, as required by Code·Cr. Proc. § 598, and the testimony of the absent witness is cumulative only, there is no error in overruling the application.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1312–1314; Dec. Dig. § 614.*]

3. LARCENY (§ 77*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In a prosecution for theft, declarations of the defendant, introduced in evidence in explanation of his possession of the stolen property, were sufficient to authorize a charge on the law of explanation of the possession of recently stolen property.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 199–204; Dec. Dig. § 77.*]

4. CRIMINAL LAW (§ 761*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In a prosecution for theft, a charge that if the property had been stolen, and recently thereafter defendant was found in possession of it, and his explanation is reasonable, and probably true, and accounts for his possession in a manner consistent with his innocence, the jury should consider the explanation as true, and acquit the defendant, but that if the explanation was unreasonable, and did not account for defendant's possession in a manner consistent with his innocence, or if it was reasonable, and probably true, and did account for defendant's possession, but the state has shown the falsity thereof, the jury should take the possession of the defendant, together with his explanation, in connection with all the other facts and circumstances, if any, in evidence, and, if they believe the defendant guilty beyond a reasonable doubt, they should so find, otherwise they should ac-

quit the defendant, was not on the weight of evidence, in assuming that the property delivered by defendant to the injured party was stolen.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1754–1764; Dec. Dig. § 761.*]

**5. LARCENY (§ 58*)—EVIDENCE—SUFFICIENCY.**

In a prosecution for theft, evidence *held* to sustain the charge of the indictment that the property taken was lawful current money of the United States of America.

[Ed. Note.—For other cases, see Larceny, Dec. Dig. § 58.*]

**6. CRIMINAL LAW (§ 957*) — NEW TRIAL — PROCEEDINGS TO PROCURE—AFFIDAVITS OF JURORS.**

Code Cr. Proc. art. 817, naming as a ground for new trial in felony cases the misconduct of the jury, such that the court is of opinion that defendant has not received a fair trial, and providing that it shall be competent to prove such misconduct by the voluntary affidavit of a juror, does not authorize the filing or consideration of an affidavit of a juror that his consent to the verdict was procured by representation that the jury would be confined an unreasonable length of time in case of further disagreement.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2392–2395; Dec. Dig. § 957.*]

**7. CRIMINAL LAW (§ 925*) — NEW TRIAL — CONDUCT OF JURY—COERCION.**

An affidavit of a juror that, after the jury had been out from Thursday evening till Saturday afternoon, the jury were informed that the presiding judge was going home, and would not return till the following Tuesday, and would leave instructions that the jury should not be discharged till his return, unless they arrived at a verdict, whereupon the affiant gave his consent to the verdict, was not sufficient to authorize a new trial.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 925.*]

Appeal from District Court, Leon County; S. W. Dean, Judge.

Lon Bacon was convicted of theft, and appeals. Affirmed.

C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, J. The appellant was indicted for the theft of $295 in money from H. Spruce. The jury found him guilty of theft of over the value of $50, and assessed his punishment at two years' confinement in the penitentiary. The evidence in the case amply sustains the conviction.

1. The first ground of exception by appellant is the action of the lower court in overruling his motion for a continuance. The application states that it was the first application. The judge, in approving the bill, states that it was the second application, and contains only the requisites of the first. The appellant, having accepted this bill of exceptions as allowed, is bound thereby, and we hold that it is the second application. It contains neither of the requisites of a second application. Code Cr. Proc. art. 598. Besides this, the testimony of the absent witness seems to be cumulative only. There was no error in the action of the court overruling this application for continuance.

2. The second complaint is of the fourth paragraph of the charge of the court, claiming that the same was a misdirection to the jury, in that the court charged on the law of explanation of the possession of recently stolen property, and that it was upon the weight of the testimony in assuming that the property delivered by defendant to the injured party was stolen, and because the question of the recent possession of stolen property and the defendant's explanation of such possession was not raised by the evidence. The question of the defendant's explanation of his possession of the recently stolen property was directly in issue by the testimony offered by the defendant himself. When his explanation was offered in evidence, the state objected because it was a self-serving declaration. The court overruled this, stating that he would permit him to prove explanation of his possession. Such declarations were proven by his own witnesses, Penn Hammett, Sam Stockner, and his wife.

The other ground of complaint against the charge on this subject is without merit. The charge, in substance, on that question was this: "If you believe from the evidence that the property described in the indictment had been stolen from H. Spruce, and that recently thereafter the defendant was found in the possession thereof, and when his possession was first questioned he made an explanation of how he came by it, and you believe that such explanation is reasonable and probably true, and accounts for defendant's possession in a manner consistent with his innocence, then you will consider such explanation as true, and you will acquit the defendant. If, on the other hand, you believe such explanation was unreasonable, and did not account for defendant's possession in a manner consistent with his innocence, or if such explanation was reasonable and probably true, and did account for defendant's possession in a manner consistent with his innocence, but the state has shown the falsity thereof, then you will take the possession of the defendant, together with his explanation, in connection with all the other facts and circumstances, if any, in evidence, and if you believe the defendant guilty beyond a reasonable doubt, you will so find; otherwise, you will acquit the defendant."

This charge, taken as a whole, was not on the weight of the testimony, and did not assume that the property was stolen, but submitted that question to the jury clearly and aptly. The issue in the case, as stated by appellant in his motion for a new trial, in substance, was whether or not defendant took the property from the possession of H. Spruce (if he took it) with intent to appropriate it to his use and benefit and to deprive the owner of the value thereof, or (if he took it)

whether he did so with the intent to return it to the owner. The main charge of the court on this subject, to which there is no complaint, clearly submits this question to the jury, with the appropriate definitions of theft and the intent with which the property was taken, if it was, by the defendant.

3. The next ground assigned is that the court erred in failing to charge the jury on the law of recent possession of alleged stolen property unexplained, claiming that the evidence shows that the appellant was in possession of said alleged recently stolen property, and that he did not assert a distinct claim of ownership thereto, but, on the contrary, asserted said ownership to be in the injured party. There was no error in the court's charge on this subject, because all of these matters were clearly and distinctly submitted to the jury. The appellant himself offered proof on this question, and his whole defense appeared to be on that alone. It was all aptly and appropriately submitted to the jury by the court, and found against the appellant.

4. The next ground is that the verdict of the jury is not supported by the evidence, in that the indictment charges the defendant with the theft of $295 in money, then and there lawful current money of the United States of America, and the evidence fails to show that any of the property alleged to have been taken from the possession of Spruce was lawful current money of the United States, except $1.25. The record shows that all of the testimony, both by the state and defendant, spoke of the property as money. The testimony of all the witnesses so described it. Besides, the witness Spruce himself stated: "That [money] was lawful current money of the United States of America. I suppose it was." The witness Barnes testified that the money was in greenbacks. The evidence was amply sufficient on this ground.

5. The next ground attacks the verdict of the jury as contrary to the law and the evidence, in that the evidence shows that defendant was drunk before he took said property, if he took it, from the possession of the injured party, and was still drunk when he exhibited it and declared it to be the property of Spruce, the alleged injured party, and that he intended to return it, and that he did not take it from the possession of Spruce, if he took it, with the intent to appropriate it to his own use and benefit, and with the intent to deprive Spruce of the value thereof. All these questions were aptly, as stated above, submitted to the jury by the charge of the court, and the verdict was against the appellant on the issue.

6. The last assignment is that the verdict of the jury was obtained by force, coercion, and undue and unlawful influence on the part of the court and the officer who had charge of the jury during the time they were considering of their verdict, specifying wherein this consisted, as shown by the affidavit, attached to the motion, of one of the jurors, which was to this effect: That the case was submitted to the jury about 6 o'clock p. m. on August 25, 1910. The jury then retired, and upon the first ballot stood ten for conviction and two for acquittal. That thereafter the jury stood eleven for conviction and one for acquittal, the affiant being alone for acquittal. That during their deliberations, from August 25th to the afternoon of the 27th, the jury was informed by the officer who had them in charge that the presiding judge had informed him that he (the presiding judge) was going home on Saturday afternoon, August 27th, and would not return until Tuesday, August 30th, and would leave instructions that the jury should not be discharged until he returned, unless they arrived at a verdict. That about 2 o'clock p. m. on Saturday, August 27th, he saw a horse and buggy hitched to the courthouse fence, and was informed that it belonged to the presiding judge, that he was going home to Madisonville, and would not return until Tuesday. Thereupon he told the other jurors that they could go ahead and do as they pleased, but he would not sign the verdict as foreman; that he had doubts as to defendant's guilt, and would have nothing more to do with it. That he left home on the morning of the 22d of August. That his business at home needed his attention, and when he was informed and realized that he would be held as a juror and could not go home until the following Tuesday, unless he agreed to a verdict in said cause, he consented for the other jurors to do as they pleased without any interference on his part.

Article 817 of the Code of Criminal Procedure provides that new trials in felony cases shall be granted for the following causes, and for no other (subdivision 8): "Where from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial, and it shall be competent to prove such misconduct by the voluntary affidavit of a juror." The rule is well established that no affidavit, deposition, or other sworn statement of a juror will be received to impeach a verdict, or to explain it, or to show on what grounds it was rendered. Weatherford v. State, 31 Tex. Cr. R. 530, 21 S. W. 251, 37 Am. St. Rep. 828. In Pilot v. State, 38 Tex. Cr. R. 515, 43 S. W. 112, 1024, the court held it was not error to refuse to set aside a verdict upon the affidavit of a juror that he had been coerced through fear to assent to it. Nor will a verdict be set aside on account of the affidavit of a juror that he was induced to sign the verdict by a promise that the jury would recommend the defendant to executive clemency. Henry v. State, 43 S. W. 340; Montgomery v. State, 13 Tex. App. 74. In the case of Johnson v. State, 27 Tex. 758, the Supreme Court said: "No case has yet occurred in this state wherein courts have tolerated

such affidavits to impeach verdicts. If ever admissible, they can only be allowed in an extreme case, and under imperative necessity for the accomplishment of justice. The rule rests upon the obvious ground that, were it otherwise, few verdicts would escape attack from jurors under influences that would be brought to bear upon them after their discharge by the court." This was emphasized and reiterated by this court in the case of McCane v. State, 33 Tex. Cr. R. 476, 26 S. W. 1087; but the court in that case held that that case, where eight of the twelve jurors made an affidavit attacking their own verdict, and by praying the court for a new trial, presented an extreme case, and they considered that affidavit and reversed that case. In our opinion the lower court should not have permitted this affidavit to have been filed. It does not show an extreme case that would justify the court to permit it being filed or considered, and we are of opinion that, even though filed and considered, it does not show such coercion as would justify the lower court, and especially this court, in granting a new trial because thereof.

There being no error shown by this record, the judgment is affirmed.