### DEAN SCHUMACKER v. THE STATE.

No. 18917.  Delivered April 28, 1937.
Rehearing Denied June 23, 1937.

18

The opinion states the case.

*Stanley Caufield* and *George Rodriguez,* both of El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *John W. Penn,* Assistant District Attorney, both of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of burglary, and his punishment was assessed at confinement in the state penitentiary for a term of two years.

Appellant's first contention is that the evidence is insufficient to warrant and sustain his conviction. The testimony adduced by the State, briefly stated, shows that on the night of March 2, 1936, the drug store of Z. Monroe, located in the town of Van Horn, was entered and various items of jewelry, including one Illinois Elgin select fifteen jewel gold watch, number 4906397, were taken from the store. The burglarized drug store was located in the south part of the building and a pool hall in the north part thereof. The pool hall, which was owned by J. T. Cantwell, was separated from the drug store by a partition wall with a door in the partition which locked on the inside of the drug store. On the east side of the drug store was a door which was securely fastened by hasp and bolt on the inside. Appellant, who was employed by Mr. Cantwell at the pool hall, came into the drug store just before closing

time, locked the door leading from the drug store into the pool hall. While he was in the drug store two customers came in and Mrs. Monroe, who was running the business, went with them to the kitchen in the rear of the building. Appellant remained in the front part of the store and was the only person in the store at the time. When Mrs. Monroe returned from the kitchen to the store, the appellant went out. She then closed the front door and locked it and left for the night without giving any attention to the east side door which she had bolted earlier in the evening. At about two A. M. of said night the night watchman saw appellant going across the street from the Club Cafe towards the drug store where he disappeared in the darkness near the east door. On the following morning when Mr. Monroe opened the store for business he noticed that the jewelry cases had been prized open and some of the jewelry was missing. An inspection of the building showed that no doors or windows had been broken, but the door on the east side of the building was unbolted from the inside. After the alleged burglary appellant continued in the employment of Cantwell for about two weeks and then went to Colorado. The sheriff of Culberson County, who was making an investigation of the burglary, notified the chief of police at Colorado to watch appellant. He soon learned that appellant had sold a watch to a boy by the name of Aubrey Lucas. He obtained the watch from Lucas and forwarded it to the sheriff of Culberson County. The sheriff delivered it to Mrs. Monroe after she had identified it as one of the articles taken from the store on the night of the burglary. Mrs. Monroe had the invoice which carried the number of the watch and it corresponded with the number in the back of the watch.

Appellant defended upon two theories. His first theory was that of an alibi which he supported by the testimony of himself and that of Mr. and Mrs. Cantwell to the effect that he, the appellant, retired about one A. M. on said night and was in bed at two A. M., the time when the night watchman testified he saw him crossing the street going from the cafe towards the drug store. The alibi was controverted by the night watchman and this issue was determined adversely to the appellant's contention.

The other defensive theory was that the watch which Mrs. Monroe identified as a part of the property taken from the burglarized premises was not the watch which appellant sold to Lucas, in that, the watch which he sold Lucas was a white gold Elgin watch with twenty-one jewels while the watch iden-

tified by Mrs. Monroe was a white gold Elgin Special with fifteen jewels. The testimony of Lucas is to the effect that he was under the impression that the watch which he purchased from the appellant in the month of March was an Elgin with twenty-one jewels. Appellant's testimony, which was to the same effect, was controverted by the fact that the watch which Lucas acquired from the appellant was the same watch which he turned over to the chief of police. The number of the watch corresponded with the number on the invoice. Although there is some difference, according to the testimony, as to the number of jewels in the alleged stolen watch and the one sold by appellant to Lucas, nevertheless the fact remains that the watch which appellant sold to Lucas came from the store of Z. Monroe and was taken on the night of the burglary. Hence it is obvious that the jury's conclusion finds support in the testimony.

Appellant's next contention is that the court erred in overruling his motion for a new trial based on the ground that the verdict of the jury was the result of coercion on the part of the court and the officers in charge of the jury during their deliberations, in this, that after the jury had considered the case for twenty-six hours they informed the court that they were hopelessly deadlocked; that someone said that they would have to remain confined for seventy-two hours longer which caused one of the jurors, who stood for an acquittal, to surrender his convictions and agree to a verdict of guilty. In support of his allegations in the motion appellant offered one of the jurors who testified, in substance, that he was one of the jurors who sat in the case of State of Texas against Dean Schumacker; that he was twenty-nine years of age and weighed one hundred and eighty-five pounds; that he was a perfectly well and healthy man; that after they had deliberated about twenty-six hours they announced to the sheriff or to someone in charge of the jury that they were hopelessly deadlocked; that the officer said he would ask the judge about it; that he then said we would have to wait a while; that he didn't say how long; that someone said they would have to remain forty-eight hours in addition; that the weather was getting cool; that they had to sleep on a mattress on the floor with but one quilt and one pillow; that it was rather uncomfortable; that he was one of the jurors who was voting for not guilty; that the fact that he heard that they would have to remain about forty-eight or seventy-two hours longer influenced him in changing from not guilty to guilty; that there were other

reasons which caused him to change; that he made no complaint to the sheriff or his deputy that the conditions were uncomfortable or bad; that they had a stove, running water, and a toilet; that he changed his vote from not guilty to guilty for different reasons. The State offered three jurors much older than the one offered by the appellant who denied that conditions in the jury room were uncomfortable or that they heard any of the jury complaining. Mr. Hall, one of the jurors, testified that when they first went into the jury room to begin their deliberations he remarked that they might hold them seventy-two hours; that there was no further discussion of the matter than that some of the jurors did say they could stay there as long as anyone. No testimony was offered to show that the court or any officer in charge of the jury advised them that they would be held to deliberate for seventy-two hours. We do not think that the testimony is sufficient to show that the verdict of the jury was obtained by coercion or undue influence. The juror who said he changed from not guilty to guilty testified that he did so for different reasons, one of which might have been that he finally concluded that appellant was guilty. The length of time that the jury may be held for deliberation rests largely in the sound discretion of the trial court and unless it is made to appear that the court abused his discretion in this regard no reversible error is shown. See Bacon v. State, 134 S. W., 690; Glasser v. State, 233 S. W., 969.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant moves for rehearing on the single proposition that the evidence is not sufficient to identify the watch exhibited to the jury as one of those taken from the alleged burglarized store. Aubrey Lucas was the witness supposed to have gotten from appellant the watch in question. Lucas testified:

"I did buy a watch from him sometime in the spring of this year, sometime about March, in Colorado. I paid him five dollars for it. He didn't tell me where he had bought it. I turned the watch over to Chief Hickman, the chief of police

in Colorado. * * * Yes, the watch I bought from him Chief Hickman, the chief of police, took away from me."

We quote from the testimony of Mr. Hickman:

"I am chief of police, Colorado, Texas. * * * I know Aubrey Lucas. * * * I found Aubrey Lucas in Kermit. I went and took the watch, and I sent the watch to Mr. Anderson, sheriff of this county. Yes, this watch you show me looks like the watch I sent to Sheriff Anderson. I sent to Sheriff Anderson the same watch I took off of Aubrey Lucas."

We quote from the testimony of Sheriff Anderson:

"I received this watch which I turned over to you in the presence of the jury today; I received this watch from Chief Hickman, the witness who has just testified, and this is the same watch."

We quote from the testimony of Mrs. Monroe who, with her husband, operated the drug store that was burglarized:

"I never recovered back any of those watches except this one. The last time I saw this watch it was in the case, and the next time I knew of it Mr. Anderson, the sheriff, said he had it. The only other time I had seen it was in the jewelry case. The watch you are showing me is the same watch. This is the only watch we carried of this particular type."

It is needless for us to attempt to add to what is thus plainly shown from the testimony of the witnesses. The watch was identified.

The motion for rehearing is overruled.

*Overruled.*