## Ed Weatherford v. The State.

### No. 30. Decided February 8.

1. **De Facto Officer, who is.**—A de facto officer is one who has the reputation of being the officer, and yet is not a good officer in point of law; in other words, the de facto officer is one who acts under color of a known and valid appointment, but has failed to conform to some precedent requirement—as to take the oath, give a bond, or the like.

2. **Same—Authority of De Facto Officer.**—A de facto officer known to be such, has authority to prevent violations of law committed in his presence, and it is his duty to arrest parties guilty of such violations. He has authority, and it is his duty if necessary, to summon others to aid and assist him in arresting the offender. And a party thus summoned to aid and assist the officer in making such arrest is justifiable in doing so, and can not be held to act at his own peril because of the defective or nonrecord of the officer's right or title to his office.

3. **Charge of Court—Illegal Arrest—Murder.**—On a trial for murder, where the testimony showed that one E. had been acting under written appointment from the sheriff as deputy for some four or five months (which was known to defendant), and that he had recorded his oath of office but not his appointment, and it was further shown that E., seeing the defendant making a negro dance at the muzzle of his six-shooter, summoned the deceased to assist him in arresting the defendant, which they attempted to do, whereupon defendant shot the deceased and attempted to shoot the officer, one of the questions being the validity of E.'s appointment as deputy sheriff, and the court charged the jury that the arrest or attempted arrest was illegal: *Held*, that the charge was erroneous: and the court should have charged the jury that if E. was known and recognized in the community as deputy sheriff, and deceased was summoned by him to assist, and in good faith attempted to assist in the arrest of defendant, deceased was justifiable in making the arrest; and if defendant shot him while so acting in an orderly manner, it could not be less than murder.

4. **Improper and Illegal Argument of District Attorney.**—In his closing speech before the jury, where the district attorney stated that he was informed that defendant had succeeded in getting one of his friends on the jury: that one of the jurors had gone upon the jury to hang it, and had so stated just before he was empanelled; that the juror had his mind made up when he swore on his voir dire that he had formed no opinion; and that he, the district attorney, had only eleven men to speak to, as the other was there to hang the jury: *Held*, that such remarks, whether true or untrue, must have affected most injuriously the rights of defendant, and constituted in themselves reversible error.

5. **Affidavit of Jurors to Impeach Verdict.**—The rule is well established, that no affidavit, deposition, or other sworn statement of a juror, will be received to impeach a verdict, or to explain it, or to show on what grounds it was rendered.

6. **Omission in the Charge.** — See attention of the trial court called to the fact that a charge upon murder omitted to instruct the jury under the statute (Code of Criminal Procedure, article 728), that they are the exclusive judges of the facts proved and the weight to be given to the testimony.

Appeal from the District Court of Tyler. Tried below before Hon. W. H. Ford.

Appellant was tried under an indictment charging him with the murder of one John Bowers, and was convicted of murder in the second degree, his punishment being assessed at twenty-five years imprisonment in the State penitentiary.

The deceased, John Bowers, was shot by defendant on Sunday evening, March 15, 1891, at Hyatt, a railroad station in Tyler County, Texas, and died from the effects of the wound on the night of the 18th of March, 1891, at Hyatt.

One Laurence Edwards had been appointed by the sheriff of Tyler County his deputy, and had qualified and had his oath of office recorded in the office of the county clerk, but had never had his appointment so recorded; he had, however, been acting as a deputy sheriff for four or five months, and his official character seems to have been well known in the community, as well as to the defendant. The circumstances leading up to and attendant upon the homicide are fully set out in the testimony of Charlie Walker, which is as follows:

I live in Livingston, Polk County, Texas. About the 15th of March, 1891, I lived at Hyatt, Tyler County, Texas. I know defendant, Ed. Weatherford; there he sits. (Points him out in court.) I know Laurence Edwards. I knew a man called Jack Bowers at Hyatt. One Sunday evening, just after the passenger train passed Hyatt, going to Beaumont, a lot of us colored people were standing around the platform where people get on and off the trains; this was also near the front of Mr. E. C. Parson's saloon.

The defendant, Weatherford, was there talking to a lot of colored people; he was playing with me. I was playing a harp and defendant was telling me to dance. He (defendant) had a pistol in his hand; he had the pistol pointed down at my feet, telling me to dance, and Mr. Edwards and Bowers came along, and Mr. Edwards said to defendant, "Ed, give up your pistol;" and defendant said, "Go on. I'm not going to hurt anybody." Mr. Edwards replied, "You know I am an officer, and it is my duty;" and said to Mr. Bowers, "Jack, help me to take the pistol." The defendant said, "Go on, Jack, I'm not going to hurt anybody;" and Mr. Edwards again said to defendant, "You know it is my duty." Mr. Jack Bowers then put his hand on defendant's shoulder, and defendant at that shot Jack Bowers with the pistol; and Mr. Bowers put his hands to his stomach and walked off; and then defendant shot Mr. Edwards several times with the pistol and then ran off down the railway; and as he started to run off defendant said, "I told you to let me alone." I did not hear Mr. Bowers say anything to defendant. I did not see defendant have any bottle at that time, and did not see him give or offer any bottle to Mr. Edwards. This all happened on Sunday evening, about the 15th of March, 1891, at Hyatt, Tyler County, Texas.

This witness' testimony is, in the main, corroborated by the other witnesses for the State.

The witness Montgomery testified: Edwards and Bowers came to where the defendant and the negro were, and said to defendant, "You will have to give up your pistol." Defendant said, "I won't do it." Then Edwards said to Bowers, "Take hold of him," and Bowers started to take hold of defendant, and defendant shoved Bowers back two or three times, and said, "Let me alone," and defendant then put his hand back to his pistol, and Bowers put his hand back and said, "Don't do that," and at this defendant shot Bowers, and Bowers put his hand to his stomach, and walked off. Edwards had hold of defendant by his right arm and left shoulder, and defendant reached his right hand around and shot Edwards. Edwards fell, and defendant struck him on the head with his pistol two or three times and said, "God damn you, I told you I would hurt you," and then defendant ran off.

Bill Roberts testified, that in not more than five minutes after he heard the pistol shots, defendant came home with a pistol in his hand, and said that he had killed two "sons-of-bitches."

Defendant was arrested on the Wednesday following, some forty miles from the place of the shooting.

These are substantially the important facts in the case.

Defendant proved that Edwards' appointment had never been recorded in the county clerk's office, and he objected to all parol evidence admitted by the court as to his appointment.

His counsel also requested the court to instruct the jury, in effect, that in order to make the appointment of a deputy sheriff valid, such appointment must be recorded in the office of the county clerk. That no act attempted to be performed by a pretended deputy sheriff, who had not previously had his appointment as such deputy recorded, was legal, and that if such pretended deputy sheriff attempted to arrest a citizen, and the citizen, in resisting such arrest, shot or killed such pretended officer, or any one acting with him in such illegal arrest, then the killing would amount to no higher grade of offense than manslaughter. This instruction was refused.

Upon the issue of Edwards' authority to make the arrest of the defendant, the court instructed the jury as follows: "The proof in this case fails to show that Edwards was a legally qualified officer or deputy sheriff of Tyler County, about the 15th of March, 1891; and if he and the deceased attempted, by force, to arrest the defendant, they were naked trespassers, and the defendant had the right to stand his ground and resist such arrest by the use of such means as appeared to him reasonably necessary to prevent such arrest, being responsible for an abuse of his rights, and would be protected in his rights of self-defense."

And again: "On the subject of the authority of Edwards to arrest or

attempt the arrest of the defendant on the occasion of the difficulty in which the evidence shows that John Bowers lost his life, I instruct you, as before told, that the proof fails to show that Edwards was a legally qualified deputy sheriff of Tyler County, and that if he did attempt the arrest of the defendant at the time of the difficulty which resulted in the death of John Bowers, such attempted arrest was unlawful, and all the testimony on the subject of whether or not Edwards was or was not a legally authorized deputy sheriff of Tyler County, and the evidence before you in respect to .his acting as deputy sheriff of Tyler County, you are entitled to consider such evidence only in connection with all the other facts and circumstances in evidence before you in determining the question or issue as to the condition of the mind of the defendant when he shot and killed Bowers (the deceased), if you find that he did shoot and kill him, and the question as to what the defendant felt or had cause to feel was the motive and purpose of the deceased and Edwards when they approached him and attempted his arrest, if you believe from the evidence that they did so attempt to arrest him, that you may properly and correctly determine from all the facts and circumstances in evidence before you whether or not the defendant is guilty, and if guilty, as to whether he is guilty of murder of the first or second degree or of manslaughter.''

Defendant saved a bill of exceptions to the following remarks made by the district attorney in his closing address to the jury: '' Whenever a defendant has a bad case he always tries to get a man on the jury to hang it; and gentlemen of the jury, you have got that man among you. The defendant has got his man on that jury to hang it. I am reliably informed that there is a man on this jury who said and declared if he got on this jury he would clear this defendant,'' etc. Whereupon, defendant's counsel then and there excepted to said remarks; and the district attorney continuing, said: ''And that juror said in the court house this morning, while the jury was being empanelled, that he was afraid the jury would be completed before his name was reached; and that juror came around here and answered under oath that he had formed no opinion as to defendant's guilt or innocence, and was not biased, etc.; and yet he took his seat in that jury box pledged to acquit the defendant or hang the jury, regardless of the oath he had taken to be governed by the law and the evidence, and that juror is now on the jury among you. Therefore, there are only eleven of you who will listen to me, and the other one had his mind made up when he came in the jury box to hang the jury or clear the defendant.''

*Stephen P. West, L. F. Chester,* and *Gordon Bullitt,* for appellant.—
1. Edwards was not a deputy sheriff, because his appointment had never been recorded, as is required by law; and it was error to admit parol

evidence of his appointment. Until his appointment was recorded it was of no validity, and he could not perform official acts nor make legal arrests until this was done. Rev. Stats., art. 4520; Ledbetter v. The State, 23 Texas Ct. App., 247; Alford v. The State, 8 Texas Ct. App., 560, and cases cited.

2. Appellant had been guilty of no felony, and was committing no breach of the peace that authorized his arrest by a citizen without warrant. Ross v. The State, 10 Texas Ct. App., 455; Jones v. The State, 9 S. W. Rep., 53; Willson's Crim. Stats., secs. 1722, 1723.

3. Where an illegal arrest is sought to be made, and the party about to be arrested repels his assailant by taking his life, the general rule is, that such killing would be of no higher grade than manslaughter. Authorities supra.

4. The remarks of the district attorney in his closing argument, with reference to one of the jury, who he charged had foresworn himself in order to hang the jury, were entirely outside the record, and calculated to prejudice the rights of the defendant. And that they did so prejudice them, is shown by the affidavits of Herrington, Sheffield, and Perryman, who were upon the jury which tried the case, and which said affidavits were made part of the motion for a new trial.

5. The court erred in failing to charge the jury, that they were the exclusive judges of the facts proved, and the weight to be given to the testimony. This charge should be given in all felony cases, whether asked or not. Code Crim. Proc., art. 728; Wilbanks v. The State, 10 Texas Ct. App., 642; Jackson v. The State, 22 Texas Ct. App., 443; Barbee v. The State, 23 Texas Ct. App., 199.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty-five years in the penitentiary, from which judgment he appeals to this court.

The appellant was at the depot in the town of Hyatt, with a six-shooter, making a negro dance, when one Edwards, acting as deputy sheriff, summoned the deceased, Jack Bowers, to assist him in disarming the defendant. The officer demanded his pistol, but he refused to give it up, and when Edwards advanced on him, he shot Bowers in the stomach, who died next day. He also shot Edwards, and attempted to shoot him a second time in the head, but the pistol snapped. He then beat Edwards in the head with the pistol, and escaped. On the trial the appellant questioned the validity of Edwards' appointment. Edwards testified, without objection, that he had been acting four or five months as deputy sheriff, under written appointment from Ensloe, the sheriff of Tyler County, and he had recorded his oath of office, but not his appointment. It is also

shown that appellant was aware that Edwards was acting as such deputy. Conceding that Edwards was not an officer de jure, it is clearly shown he was an officer de facto. Bish. Crim. Law, sec. 464; Bish. Crim. Proc., 185, 186.    Lord Ellenborough, adopting Lord Holt's definition, declared a de facto officer to be one who has the reputation of being the officer, and yet is not a good officer in point of law. Rex v. Corp. of Bedford Level, 6 East, 356.    In The State v. Carroll, 38 Connecticut, 449, the Supreme Court of Connecticut, in an elaborate opinion, held, a de facto officer is one who acts under color of a known and valid appointment, but has failed to conform to some precedent requirement, as to take an oath, give a bond, or the like.    Such is the holding in Texas.    Cox v. Railway Company, 68 Texas, 230; Thompson v. Johnson, 84 Texas, 548; McKinney v. O'Connor, 26 Texas, 14.    And so in other States.    Petersilea v. Stone, 119 Mass., 465; Town of Plymouth v. Painter, 17 Conn., 585; Rice v. Commonwealth, 3 Bush, 14; Brown v. Lunt, 37 Me., 423; Gregg v. Jamison, 55 Pa. St., 468; Commissioners v. McDaniel, 7 Jones (N. C.), 107; The People v. White, 24 Wend., 539.

In the case of Margate Pier Company v. Hannam (decided in 1833), 3 Barnewald & Alden, 266, it was held, that a justice's acts were valid as to third persons, though he had not taken the oath which the statute made a condition precedent to his right to act as such, and the same principle applies in respect to ministerial officers    Lisbon v. Bow, 10 N. H., 167; Merrill v. Palmer, 13 N. H., 184.    In The State v. Dierberger, where the Constitution of Missouri requires all officers, before entering on the duties of their office, to take and subscribe an oath to support the Constitution and faithfully demean themselves in office, and a deputy constable acted without taking the oath, it was held he was an officer de facto.    2 S. W. Rep., 287.    If Edwards was an officer de facto, and he summoned deceased, John Bowers, to his assistance in arresting appellant, Bowers was justifiable in obeying him.    Bish. Crim. Law, sec. 464; Watson v. The State, 83 Ala., 60.    The evidence clearly shows a violation of law in the presence of the officer, who believing it was his duty to arrest defendant, proceeded to do so, summoning deceased to assist him.    Deceased was unarmed, and so was Edwards.    It was shown that appellant was making a negro dance, by aiming a pistol at his feet.    Some of the witnesses speak of him "as having fun with the negro," but such amusement certainly demanded the interposition of the law.    Appellant knew he was violating the law.    He was told by Edwards that it was his duty to arrest him.    He knew that he was in no danger of his life, or of serious bodily injury, yet he deliberately killed the deceased, and attempted to kill Edwards, to avoid being disarmed, although believing Edwards to be an officer of the law.

Appellant insists the court should have charged the crime would be no higher than manslaughter, as the arrest was illegal.    In the Miller case,

20 S. W. Rep., 1103, this court lays down the doctrine that even in illegal arrests of an ordinary character the killing may be done under such circumstances of deliberation or cruelty as will render it murder upon express malice. But the record here shows that Bowers was killed in the discharge of duty as a citizen of this State. It surely can not be maintained that citizens who are summoned to assist known and recognized officers in the discharge of their duties act at their own peril in case of the defective or nonrecord of the deputation of the officer. Penal Code, art. 46; Bish. Crim. Proc., sec. 186.

The court charged the jury that the arrest was illegal. The court should have charged the jury, that if the said Edwards was known and recognized in the community as deputy sheriff, and said Bowers was summoned by said officer to assist, and in good faith attempted the arrest of appellant, he would have been justifiable in making the arrest, and if appellant shot him while so acting in an orderly manner, it could not be less than murder. The special charges asked were not the law.

But appellant insists that the case should be reversed because the district attorney, in his closing speech before the jury, stated that he was informed that appellant had succeeded in getting one of his friends on the jury; that one of the jurors had gone upon the jury to hang it, and had so stated just before he was empanelled; that the juror had his mind made up when he swore on his voir dire that he had formed no opinion; that he, the district attorney, only had eleven men to speak to, as the other juror was there to hang the jury.

The appellant also introduced the affidavits of two jurors, who stated that the charge made by the district attorney influenced the jury, and that they were mad about it, and that affiants were induced to vote for a verdict of twenty-five years when they thought that five years was sufficient. Upon grounds of public policy, courts have almost universally agreed upon the rule, that no affidavit, deposition, or other sworn statement of a juror, will be received to impeach a verdict, or to explain it, or to show on what grounds it was rendered (2 Thompson's Trials, section 2618, and authorities cited), and the wisdom of the rule needs no argument to support it. We can not notice the affidavits filed in this cause, showing that the appellant received a higher punishment than two of the jurors would have agreed to if they had not been provoked by the language of the district attorney. As to the charge itself made by the district attorney, which was reiterated over the objections of the defendant, and unchecked by the court, we think that, whether it was true or false, it was wrong in the district attorney to make it. The trial judge should of his own accord have promptly stopped him.

In the closing argument of the case, where the proof was very strong against the man on trial for his life, and when he had no chance to reply or deny it, to publicly charge that he was so conscious of his guilt that

he had stocked the jury to defeat justice, must have affected most injuriously the rights of appellant. Jurors disposed to be lenient may have surrendered their conviction of right under an apprehension of being suspected as the juror denounced by the district attorney. If the district attorney was in possession of facts justifying such a charge, he should have caused the arrest of the juror for perjury as soon as the jury was discharged from the case, and secured his conviction, irrespective of the question "how he voted." If the charge was false, then unquestionably it was calculated to injure appellant. Willson's Crim. Stats., sec. 2321.

For the remarks of the district attorney the judgment must be reversed; but in reversing the case, we desire to call the attention of the trial court to the omission of the charge under the statute, that the jury are the exclusive judges of the facts proved and the weight to be given to the testimony. Code Crim. Proc., art. 728.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.