**Mark Edward HENRY, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–160–CR.**

Court of Appeals of Texas,
Fort Worth.

April 8, 1992.

Reginald R. Wilson, Wichita Falls, for appellant.

Jack A. McGaughey, Dist. Atty., Montague, for state.

Before WEAVER, C.J., and HILL and LATTIMORE, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal by Mark Edward Henry who was convicted for attempted capital murder. *See* TEX.PENAL CODE ANN. § 15.01 (Vernon Supp.1992) and § 19.03 (Vernon 1989 & Supp.1992). The jury assessed punishment at forty years confinement in the Institutional Division of the Texas Department of Criminal Justice. Henry asserts the following two points of error in his appeal, namely that: (1) the trial court erred in denying his motion for new trial because there was a fatal variance between the allegation contained in the indictment and the evidence produced at trial; and (2) the trial court erred in denying his motion in limine relating to an extraneous unadjudicated offense.

We affirm.

### Statement of Facts

On the morning of December 12, 1990, Henry was traveling through Wichita County, Texas, on FM 369 when his pickup was pulled over by Deputy Sheriff Bruce Cotton of the Wichita County Sheriff's Department for not having a front or rear license plate in view. After coming to a stop, Henry got out of his truck and pointed a rifle at Cotton, instructing him to "[j]og or die." Deputy Cotton then began jogging away from the area when Henry fired at him, wounding him in the hand. The appellant then got back into his pickup truck and headed south toward Holliday, Texas. Soon after Henry's departure, another deputy sheriff arrived at the scene and radioed in a description of the appellant and his vehicle.

After being given a description of Henry's vehicle, Deputy Sheriff Colbert of the Archer County Sheriff's Department proceeded south of Archer City where he made visual contact with Henry's vehicle. After getting into a "cat and mouse" game with his vehicle and that driven by Deputy Colbert, Henry got out of his truck and fired at Colbert. Melvin Brown, an Archer County Constable, arrived at the scene. A short gun battle ensued with Henry surrendering shortly thereafter. The appellant was indicted by an Archer County Grand Jury for attempted capital murder.

### Appellant's Points of Error

■ In his first point of error, Henry maintains that his motion for new trial was improperly denied since there was a fatal variance between an allegation contained in the indictment and the evidence at trial. The evidence which Henry refers to in his brief as being that which caused the fatal variance is the testimony of Constable Brown, one of the peace officers who was fired upon by the appellant. This point of error is founded upon the apparent confusion on Brown's part as to his actual status as either a constable or deputy sheriff. Henry contends that since the indictment alleged that Brown was a constable and the evidence at trial showed him to be a de facto deputy sheriff, a fatal variance between the indictment and the evidence arose. The first question which must be resolved is whether Brown was acting as a constable or a deputy sheriff at the time of the shooting on December 12, 1990.

When Brown was first questioned regarding his employment at the time of trial he stated that he was a deputy sheriff. Only a few questions later, Brown claimed that he was still acting as constable. However, he then claimed that he was acting as a constable at the time of the offense. Then, in response to a question by Henry's counsel, Brown equivocated and stated that he was not sure if he was a constable at the time of the shooting or at the time of trial. On the following day, Brown was recalled as a witness and had apparently resolved the question in his own mind. Brown testified that he was elected as a constable of Archer County in January of 1989 and resigned shortly thereafter. He was then appointed as constable that following month by the commissioners court. Brown testified that he never resigned and was never removed from that office and no longer believed that he had ever ceased to be a constable at any point after February of 1989.

Brown maintained at trial that the confusion regarding his status as a constable or deputy sheriff arose out of the filing of certain papers with the Texas Commission on Law Enforcement Officer Standards and Education (TCLOSE). While Brown's testimony when looked at as a whole is prevaricatory in nature, his responses on the second day did adequately clarify the uncertainty which had blossomed after the first day's testimony. We agree with the State's analysis of this point when it contends in its brief that the "[a]ppellant's argument that Brown was not a constable on the date of offense depends on ignoring the second day's testimony, in which Brown clearly tries to clarify and correct his testimony from the preceding day."

Also, the appellant raises the question of whether Brown was a de jure constable at the time of the offense. As the appellant properly asserts, the record does not indicate that Brown executed a bond or took and signed the requisite oath of office after being appointed by the county commissioners in February of 1989;[1] however, Texas courts have recognized the existence of de facto peace officers. *See Smith v. Horton*, 134 S.W.2d 320, 321 (Tex.Civ.App.—San Antonio 1939, no writ) (the court specifically recognized a "constable de facto"). In *Williams v. State*, 588 S.W.2d 593, 595 (Tex.Crim.App. [Panel Op.] 1979), the court of criminal appeals reaffirmed the following definition of a de facto officer which was originally set out in *Weatherford v. State*, 31 Tex.Crim. 530, 21 S.W. 251 (1893):

> A de facto officer is one who has the reputation of being the officer, and yet is not a good officer in point of law; in other words, the de facto officer is one who acts under color of a known and valid appointment, but has failed to conform to some precedent requirement, as to take the oath, give a bond, or the like.

*Williams*, 588 S.W.2d at 595. Even if Brown did not take the requisite oath of office or even if he was required to execute bond and failed to do so after his appoint-

---

1. Section 86.002 of the Texas Local Government Code provides that a person who is elected or appointed as constable must execute a bond with two or more good and sufficient sureties as well as take and sign the constitutional oath of office. Tex.Loc.Gov't Code Ann. § 86.002 (Vernon 1988).

ment, we find that Brown still qualified as a de facto constable under the record of this case. In light of Brown's second day of testimony in which he adequately explained his previous confusion regarding his status at the time of the offense as well as the fact that he was acting as a de facto constable leads us to the conclusion that the trial court did not err in denying Henry's motion for new trial because a fatal variance between the evidence and the indictment did not exist. The appellant's first point of error is overruled.

In his second point, Henry asserts that the trial court erred in denying his motion in limine relating to an extraneous unadjudicated offense that occurred prior to the present offense. The appellant contends that the trial court allowed testimony regarding this extraneous offense and that such testimony was far more prejudicial than probative and had no relevancy to any material issue in the case. *See* TEX.R.CRIM. EVID. 403. The complained-of testimony was that of Deputy Sheriff Cotton who was wounded by Henry in Wichita County. The appellant charges that allowing Cotton's testimony in over his objection constituted reversible error.

In *Mann v. State*, the court of criminal appeals stated that "[i]n any case, the unfolding of events and the progression of the crime is necessary to a full picture and understanding of what took place." *Mann v. State*, 718 S.W.2d 741, 744 (Tex.Crim. App.1986), *cert. denied*, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). The court also stated:

> When the balancing test is applied, evidence of the context of the offense is almost always admissible under the reasoning that events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all evidence may be realistically evaluated.

*Id.* Rarely will the prejudicial value render inadmissible any evidence that is contextually helpful in understanding the facts which circumscribed the actual offense. *See id.* We hold that the trial court did not err in denying Henry's motion in limine

because the prejudicial value of Deputy Sheriff Cotton's testimony did not substantially outweigh the value of providing the jury with an unabridged depiction of what took place on the day of December 12, 1990. The appellant's second point of error is overruled.

The judgment of the trial court is affirmed.