# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00783-CR

**Amanda Sykes, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT**
**NO. 10,156, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Amanda Sykes, confessed to shooting her husband, Lee Sykes, accidentally. After a trial to a jury, she was convicted of murder and sentenced to prison for seventy-five years and fined $10,000. On appeal, she says her conviction is void because the public officials responsible for investigating and prosecuting her case failed to qualify for their offices. She also challenges the legality of the search warrant and the composition of her jury. Finding no merit to her contentions, we affirm her conviction.

## PROCEDURAL AND FACTUAL BACKGROUND

At approximately 2:30 a.m., December 20, 2001, Amanda Sykes called 911 to report an intruder. Ray Shappa, a Smithville police officer, responded and found appellant still on the phone with the 911 operator. The body of Sykes=s husband, Lee Sykes, was lying face down on a mattress on the living room floor. He had been shot above his left ear. A .22-caliber shell casing was found at the victim=s feet. Appellant told Officer Shappa that she was awakened by a low, muffled popping sound and, upon investigation, found her husband motionless on the living room floor. She told Officer Shappa that there were no guns in the house. After photographing the body and gathering the shell casing and bloody sheets, Smithville police withdrew from the house pending the arrival of the Texas Rangers.

Department of Public Safety (ADPS@) Officer L.R. Wardlow testified that he prepared an affidavit in support of a search warrant. After the affidavit was filed with Bastrop County Justice of the Peace, Raymah Davis, but before the warrant was issued and served, appellant gave DPS consent to search her home. The search uncovered a semiautomatic .22-caliber rifle under appellant=s bed. Upon discovery of the rifle, Officer Thomas E. Ratliff requested an interview with appellant.

The interview took place at the Smithville Police Station. Officer Ratliff asked appellant to make a voluntary written statement. In her statement, she said her husband decided to sleep in the living room that night. After she went to bed, she heard a soft popping sound and went to check on the children. She found the front door open and her husband lying motionless on the living room floor. She then phoned 911. While on the phone with the operator, she tried to wake her husband. She noticed blood around his head and became upset. The operator told her not to disturb anything and wait for police. At some point

2

after police arrived, she said she was told to gather the children and leave. She went to her mother-in-law=s house. She made no mention of the gun in her original statement.

After reading her statement, Ratliff read appellant her *Miranda* rights. He began to question appellant about the gun. Ratliff said Sykes became upset and began to cry. She agreed to give another written statement and changed her story. She said she decided to confront her husband about the problems in their marriage. She said she carried the gun for her protection and to scare him. She pointed the gun to his head while she tried to rouse him, and the gun then went off accidently.

In a jury trial, appellant was convicted of murder and sentenced to seventy-five years in prison and fined $10,000. On appeal, appellant raises six points of error. In point of error one, she claims that a justice of the peace was not authorized to issue the search warrant. In her second, third and sixth points of error, appellant claims her conviction is void because the DPS troopers responsible for securing her consent to search the residence, gathering the evidence, and taking her confession failed to file and periodically renew their oaths of office. She also alleges that one of her prosecutors failed to execute the correct oath of office. Points of error four and five involve the inadequacy of the jury pool and the manner in which Bastrop County resolved that inadequacy.

**Points of error two, three and six**

In her second, third and sixth points of error, appellant claims her conviction is void because the public officials responsible for taking her confession, gathering the evidence at the scene, securing her consent to search, and prosecuting her case each failed to qualify for their office. Specifically, appellant accuses Texas Rangers Ratliff, Wardlow, James Denman and Matthew Lindeman of failing to take the antibribery oath as set out in Article XVI, section 1(b) of the Texas Constitution and of failing to renew their constitutional oaths as set out in Article XVI, section 1(a) of the Texas Constitution[1] every two years as

---

[1] Article XVI, section 1 sets out two required oaths:

Sec. 1. (a) All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:

> I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.

Tex. Const. art. XVI, ' 1(a) (hereinafter the Aconstitutional oath@).

(b) All elected or appointed officers, before taking the Oath or Affirmation of office prescribed by this section and entering upon the duties of office, shall subscribe to the following statement:

> I, _____, do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected or as a reward to secure my appointment or confirmation, whichever the case may be, so help me God.

Id. ' 1(b) (hereinafter the Aantibribery oath@).

4

prescribed by Article XVI, section 30 of the Texas Constitution.[2] Her assertion is that the failure to take and renew these oaths made their actions void. Accordingly, appellant claims that the affidavit supporting the search warrant filed by Ratliff was void; her consent to search, in lieu of the warrant, given by appellant to Wardlow was ineffective; and the evidence Denman transported from appellant=s residence to the DPS crime lab was inadmissible. Appellant also accuses assistant prosecuting attorney, Sarah Wannarka, of executing the wrong oath of office. The record indicates that when Wannarka took the constitutional oath of office, the phrase Adistrict attorney@ was inserted instead of Aassistant district attorney.@

We find that the failure of the officers to take their antibribery oaths or renew their constitutional oaths and the failure of one prosecuting attorney to execute the correct oath of office does not affect their status as de facto public officers. A de facto officer is one who has the reputation of being an officer and who acts under color of a known and valid appointment, but who has failed to conform to some precedent requirement such as taking an oath, giving a bond, or the like. *Williams v. State*, 588 S.W.2d 593, 595 (Tex. Crim. App. 1979) (citing *Weatherford v. State*, 21 S.W. 251 (Tex. Crim. App. 1893)); *Delamora v. State*, No. 03-02-00557-CR, 2004 Tex. App. LEXIS 1059, at \*25-33 (Tex. App.CAustin Feb. 5, 2004, no pet. h.). Here, there is evidence in the record that each DPS trooper was acting under the color of authority and had a reputation in the community as a law enforcement officer. *See id*. Similarly, the prosecuting attorney testified that she had held her offices for some time and had a reputation in the

---

[2] Section 30 of Article XVI states that Athe duration of all offices not fixed by this Constitution shall never exceed two years.@ *Id*. ' 30.

community as a prosecuting attorney. *See Ex parte Grundy*, 8 S.W.2d 677, 677 (Tex. Crim. App. 1928) (validating acts of assistant prosecuting attorney who failed to take oath of office).

In addition to arguing the failure of a prosecuting attorney to execute her constitutional oath, appellant argued that her conviction is void because all three prosecuting attorneys failed to possess written certificates of office. She cites section 601.008 of the government code for the proposition that one holding an appointed office without a written certificate of appointment cannot exercise the power of that appointment. *See* Tex. Gov=t Code Ann. '' 601.007, .008(b), (c) (West 1994 & Supp. 2004).

Section 601.007 states:

On demand of a citizen of this state, . . . [an] officer of the state or of a municipality who is authorized by law to make, order, or audit payment to an officer of the state, of a county, or of a municipality of compensation, fees, or perquisites for official services shall, before making, ordering, or auditing the payment, require the officer to produce:

(1) the certificate of election or of appointment to the office that is required by law to be issued to the officer; . . .

*Id*. ' 601.007 (West Supp. 2004). Section 601.008 states in relevant part:

(b) A person who has not been elected or appointed to an office or has not qualified for office . . . is not entitled to:

. . .

(2) exercise the powers or jurisdiction of the office.

*(3)* The official acts of a person who claims a right to exercise the power or jurisdiction of an office contrary to this section are void.

*Id*. ' 601.008 (West 1994).

6

Nothing in those sections requires a written certificate of appointment before exercising the power of the office or appointment. To qualify for the office, an assistant prosecuting attorney need only take the constitutional oath of office. *See id.* ' 41.103 (West 1988); *see also State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 929 (Tex. Crim. App. 1994) (plurality opinion) (stating that assistant prosecuting attorney qualifies by taking constitutional oath); *Gaitan v. State*, 905 S.W.2d 703, 707 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d) (same). In *Pirtle*, the Texas Court of Criminal Appeals indicated that there was no requirement for any sort of written instrument to occupy the office of assistant prosecuting attorney. 887 S.W.2d at 929. Execution of the constitutional oath is the only requirement to hold that office. *Id.* The record indicates that each assistant prosecuting attorney had taken the constitutional oath of office. Even if it were true that the prosecuting attorneys were required to hold some written certificate of office, their acts, as we have indicated above, were validated under the de facto officer doctrine.

In short, because we find that the DPS Troopers and prosecuting attorneys were acting under color of authority, any defects in their failure to qualify were validated under the de facto doctrine. We overrule appellant=s points of error two, three and six.[3]

---

[3] In her first point of error, appellant challenged the authority of a justice of the peace to issue the search warrant. *See* Tex. Code Crim. Proc. Ann. arts. 18.01, .02 (West 1989). It is undisputed that the State obtained appellant=s written consent to search. Because we have determined that Trooper Wardlow was a de facto law enforcement officer when he secured appellant=s consent to search, we need not address

**Points of error four and five**

---

appellant=s first point of error. We find that the State proved by clear and convincing evidence that the defendant freely and voluntarily consented. *Morton v. State*, 761 S.W.2d 876, 878 (Tex. App.CAustin 1988, pet. ref=d).

In points of error four and five, appellant challenges the adequacy of the jury pool and the manner in which Bastrop County resolved that inadequacy. It is undisputed that the trial court mailed 180 jury summons to prospective jurors and only 38 potential jurors appeared. The reason for the low turnout was that the summonses were mailed to rural route addresses rather than A911 addresses.@[4] Prior to voir dire, the trial court ordered Sheriff Hernandez to round up more potential jurors. Three deputies, one from Smithville, Elgin and Bastrop, visited the grocery stores in each community and collected the names and addresses of additional prospective jurors. According to appellant, additional names should have been drawn from a Ajury wheel@ and not personally summoned by the sheriff. *See* Tex. Code Crim. Proc. Ann. art. 34.02 (West 1989). Further, according to appellant, by visiting only the grocery stores in Smithville, Elgin and Bastrop, qualified rural jury panel members were systematically excluded from the venire panel; consequently, she was denied the opportunity to chose a jury from a representative sampling of the rural and urban community.

---

[4] The record indicates that the rural addresses in Bastrop County were undergoing a conversion to city-style addresses known as A911 addresses.@

Article 34.02 of the code of criminal procedure outlines two procedures for adding additional names to a pool of potential jurors: (1) in a jury wheel county, by drawing additional names out of a jury wheel, or (2) in a county not using a jury wheel, by instructing the sheriff to summon additional members. *Id*. The record indicates that Bastrop County no longer uses a jury wheel, so the court did not err in ordering Sheriff Hernandez to summon additional potential jurors.[5] Were it error, to secure a reversal appellant would have to show harm in the trial court=s failure to comply with the statutory jury-selection procedures *and* to show that the sheriff and his deputies wilfully summoned jurors with a view to securing her conviction. *See Cooks v. State*, 844 S.W.2d 697, 726-27 (Tex. Crim. App. 1992) (emphasis added).

Appellant attempts to show harm by arguing her jury was not composed of a fair cross-section of urban and rural Bastrop County residents. To establish a prima facie violation of the fair cross-section requirement, a defendant must demonstrate: (1) the group alleged to be excluded is a Adistinctive@ group in the community; (2) the representation of this group from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Pondexter v.*

---

[5] Appellant makes the argument that use of a computerized jury-selection process is the modern-day equivalent of a jury wheel-selection process. She fails, however, to cite any authority for that proposition or to make an argument beyond the bare assertion that the two methods are equivalent. Regardless, as we discuss below, appellant has not shown she was harmed by the substitute procedure.

*State*, 942 S.W.2d 577, 580 (Tex. Crim. App. 1996) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Appellant fails on all three counts. Appellant failed to show that rural residents are a distinctive group. A Adistinctive group@ shares some common thread of experience or viewpoint different from any other group. *Weaver v. State*, 823 S.W.2d 371, 373 (Tex. App.CDallas 1992, pet. ref=d). Appellant failed to show how rural jurors would think or react differently from urban residents. *See United States v. Di Tommaso*, 405 F.2d 385, 392 (4th Cir. 1968). While she presented some evidence that Bastrop County was divided somewhat along urban and rural populations,[6] she did not show that this rural minority was underrepresented on the jury that heard her case. *See Duren*, 439 U.S. at 365-66; *Pondexter*, 942 S.W.2d at 580 (defendant established distinctive group but failed to show group=s percentage on jury panel). She presents no evidence as to the composition of her jury. Last, she fails to show that the underrepresentation, if any, was the product of systematic exclusion. *See Duren*, 439 U.S. at 366; *May v. State*, 738 S.W.2d 261, 269 (Tex. Crim. App. 1987) (ADisproportionate representation in a single panel does not demonstrate the systematic exclusion of distinctive groups in violation of the appellant=s rights under the Sixth Amendment.@).

In addition to showing harm from an unrepresentative jury, appellant had to show that Sheriff Hernandez wilfully summoned jurors with a view to securing her conviction. *See* Tex. Code Crim. Proc. Ann. art. 35.07 (West 1989); *Cooks*, 844 S.W.2d at 727; *Phillips v. State*, 748 S.W.2d 560, 561

---

[6] Appellant states that the 2000 Census revealed that Bastrop County consisted of roughly 61 percent urban residents and 39 percent rural residents.

(Tex. App.CHouston [1st Dist.] 1988, no pet.).  While Sheriff Hernandez testified, appellant made no attempt to show that he summoned or instructed others to summon prospective jurors with a view of securing appellant=s conviction.  Sheriff Hernandez=s deputies did not testify.

We overrule appellant=s fourth and fifth points of error.

## CONCLUSION

We conclude that the failure of DPS troopers and the prosecuting attorneys to properly qualify did not render their acts void because each established de facto authority to exercise the power of their office or appointment.  In addition, appellant failed to show that the trial court failed to follow the statutory jury-selection procedures, that the statutory officer summoning the jury wilfully summoned jurors with a view to securing her conviction, or that her jury was not composed of a fair cross-section of the county.  We affirm her conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed:   March 4, 2004

Do Not Publish