**Opinion issued May 2, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00034-CR

———————————

**MARCUS ANTHONY SHUFF, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 10CR0506**

---

## MEMORANDUM OPINION

A jury convicted appellant, Marcus Anthony Shuff, of murder, found two

enhancements true, and the trial court assessed punishment at confinement for life.

In two points of error, appellant contends that the trial court erred by (1) admitting

evidence of two extraneous offenses, and (2) by allowing the medical examiner to testify because a statement of appointment and oath of office was not on file at the time the medical examiner performed the autopsy. We affirm.

## BACKGROUND

On October 5, 2007, a Galveston County Deputy Constable found seventy-four year-old Albert Lacy dead in his home in Bacliff, Texas. Lacy had died from blunt force trauma to the head.

The Galveston County Medical Examiner, Dr. Stephen Pustilnik, performed the autopsy on Lacy and found multiple lacerations and chop injuries to the scalp. He concluded that Lacy was hit by a smooth object such as a baseball bat, ax handle, broomstick, or smooth pipe. He also concluded that Lacy was hit with at least three different types of instruments.

When the Galveston County Sheriff's Office investigated the scene, they found a baseball bat floating in a pond on Mr. Lacy's property. During the course of the investigation, Detective M. Bonner of the Galveston County Sheriff's Office collected DNA samples from Roberto Villanueva, Joshua Tucker, Jesse Travis Brown, Michael Shannon Davis, and appellant. Tanya Dean, a forensic DNA analyst at the DPS crime lab in Houston, conducted a DNA analysis on the baseball bat. She tested the blood found on the head of the bat and found that it

2

matched Lacy's DNA. She also concluded that the DNA found on the grip of the bat matched Joshua Tucker's DNA. Appellant's DNA was not found on the bat.

A few days after the offense, on October 19, 2007, Detective Bonner conducted a video-taped interview of appellant, who stated that he did not know who killed Lacy.

Over a year later, appellant approached police and Detective Bonner conducted a second video-taped interview of appellant on November 21, 2009. In the second interview, appellant stated that he stole a green truck and drove to Lacy's home. Once there, he stated that he killed Lacy by hitting him in the head with the baseball bat and then throwing the bat in a pond in front of Lacy's house. He also stated that he committed the killing alone. He stated that he killed Lacy because Lacy was "suffering." Lacy had an infected abscess on his neck that had been chronically draining into his skin. However, the medical examiner testified that the abscess was not cancerous. Subsequently, appellant was indicted for Lacy's murder and was arrested on February 18, 2010.

Appellant's theory of the case at trial was that he gave a false confession, and that Joshua Tucker, whose DNA was on the baseball bat, was the true murderer. In support, appellant presented evidence that, four months before the murder, Tucker and Lacy had gotten into a dispute, and that Lacy had pulled a gun on Tucker. As a result, Tucker had Lacy charged with aggravated assault.

3

Appellant's evidence also suggested that Tucker was extorting $600 from Lacy in return for dropping the criminal charges, and, in fact, the charges were dropped the day before Lacy's death. There was also evidence that another man, Robert Villanueva, had been arrested and charged with Lacy's murder before appellant confessed.

Having heard this conflicting evidence, the jury apparently believed appellant's confession to be substantially true and convicted him of Lacy's murder. This appeal followed.

## EXTRANEOUS OFFENSES

In appellant's first point of error, he argues that the trial court violated Rules of Evidence 401, 403, and 404(b) by admitting extraneous offense evidence of theft of a vehicle and cocaine use. In his confession, appellant stated that he stole a green pickup truck and drove to Lacy's house before committing the murder. He also stated that, after the murder, he felt so guilty about it that he went on a cocaine binge. Before trial, appellant moved to suppress both of these extraneous offenses. The trial court granting the motion as it applied to evidence that appellant used the stolen truck after the murder, but allowed evidence that appellant stole and used the truck to go to Lacy's house to commit the murder. The trial court also allowed evidence of appellant's cocaine binge after the murder.

*Standard of Review*

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Pierre v. State*, 2 S.W.3d 439, 442 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). We recognize that a trial court must be given wide latitude to admit or exclude evidence. *See Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); *Pierre,* 2 S.W.3d at 442. If the trial court's evidentiary ruling is within the zone of reasonable disagreement, we will not disturb the ruling. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *Sunbury v. State*, 33 S.W.3d 436, 441 (Tex. App.—Houston [1st Dist] 2000), *aff'd*, 88 S.W.3d 229 (Tex. Crim. App. 2002). Conversely, if the trial court's ruling "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree," then we must reverse for abuse of discretion. *Burks v. State*, 227 S.W.3d 138, 147 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005)).

*Rule 401 & 404(b)*

Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.

R. EVID. 401. Evidence of other crimes, wrongs, or acts is not admissible to prove character conformity, but may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404.

*Theft of the Pickup Truck*

Appellant argues that "stealing the truck wasn't part of some 'motive, opportunity, intent, preparation, or plan' or any of the other purposes contemplated by Rule 404(b)," because he stole the truck before he formed the intent to kill Lacy. However, the State not only argued that the theft was relevant to show "motive, opportunity, intent, preparation, or plan," it also argued that it was admissible to corroborate appellant's confession. We agree.

A defendant cannot be convicted based solely on an extrajudicial confession. *See Salazar v. State,* 86 S.W.3d 640, 644 (Tex. Crim. App. 2002). There must some additional evidence that, considered alone or in connection with the confession, tends to show that the crime actually occurred. *Id.* at 645. To be sufficient, the corroborating evidence need only permit a rational finding of guilt beyond a reasonable doubt when considered in conjunction with the extrajudicial confession. *Turner v. State,* 877 S.W.2d 513, 515 (Tex. App.—Fort Worth 1994, no pet.). The doctrine is concerned with preventing a conviction from being based

solely upon a false confession. *Bible v. State*, 162 sw3d 234, 247 (Tex. Crim. App. 2005).

The list of exceptions under Rule 404(b) is "neither mutually exclusive nor collectively exhaustive." *Montgomery v. State,* 810 S.W.2d 372, 377 (Tex. Crim. App. 1990). The Court of Criminal Appeals has held that extraneous-offense evidence is also admissible to corroborate certain kinds of statements and testimony, such as to rehabilitate an impeached witness or corroborate a defendant's confession. *Prible*, 175 S.W.3d at 731 (citing *Long v. State*, 823 S.W.2d 259, 273 (Tex. Crim. App. 1992) and *Crank v. State*, 761 S.W.2d 328, 343 (Tex. Crim. App. 1988)).

Here, in appellant's confession to police he stated that he stole a green truck from a certain location and then drove that truck to Lacy's home, where he then committed the murder. At trial, the State was able to corroborate this portion of appellant's confession by introducing evidence from Bruce Alexander that his green truck had been stolen on the same day and from the same location as appellant indicated in his confession. An officer from the League City Police Department confirmed that he wrote a report for a stolen truck by Bruce Alexander at the same time and location as described by appellant in his confession. Thus, the evidence of the stolen truck was not relevant just to show "character conformity,"

but was relevant under 401 and admissible under 404(b) to corroborate appellant's confession.

*The Cocaine Use*

Appellant also contends that the trial court erred in admitting evidence of his cocaine use after the charged offense. The State responds that the evidence was admissible to show appellant's "consciousness of guilt." Under the circumstances presented in this case, we agree with the State.

> A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt. It is consequently a well-accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt' may be received as a circumstance tending to prove that he committed the act with which he is charged.

Ray, Texas Practice Vol. 2, *Law of Evidence,* § 1538, at 242 (1980). Evidence of extraneous wrongs or bad acts is sometimes admitted to show consciousness of guilt, which is relevant apart from the question of character conformity. *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994).

While drug use does not, in and of itself, indicate a consciousness of guilt, in this case appellant stated that he went on a cocaine binge *because he felt guilty* about the murder. Thus, the trial court did not abuse its discretion in concluding that appellant's cocaine binge was evidence of his consciousness of guilt and had relevancy beyond "character conformity."

8

*Rule 403*

Appellant also argues that the evidence of the stolen truck and cocaine use was inadmissible under Texas Rule of Evidence 403. Evidence, though relevant, can nonetheless be excluded when its probative value substantially outweighs the danger of unfair prejudice. *See* TEX.R. EVID. 403. Once a trial court determines that extraneous offense evidence is admissible under Rule 404(b), the trial court must, on proper objection by the opponent of the evidence, weigh the probative value of the evidence against its potential for unfair prejudice. *Montgomery*, 810 S.W.2d at 389; *see* TEX.R. EVID. 403. Rule 403 favors admissibility of relevant evidence, and the presumption is that generally, relevant evidence will be more probative than unfairly prejudicial. *Montgomery,* 810 S.W.2d at 389. Unfair prejudice does not mean the evidence injures the opponent's case—"the central point of offering evidence." *Rogers v. State,* 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). "Rather[,] it refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Cohn v. State,* 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)).

Although not limited to the following enumerated factors, courts should balance the following factors under a rule 403 analysis: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4)

the proponent's need for the evidence. *Prible*, 175 S.W.3d at 733. The trial court is presumed to have conducted the proper balancing test if it overrules a 403 objection, regardless of whether it conducted the test on the record. *See Williams v. State,* 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).

Here, appellant argues only that the extraneous offense were "highly prejudicial" to appellant because "it portrays Appellant as a thief and drug addict." However, as we have previously discussed, the evidence of the stolen truck was probative because it corroborated appellant's confession, and evidence of the cocaine usage was probative because appellant testified that he went on cocaine binge because he felt guilty about the murder, thus evidencing a consciousness of guilt. And, while the evidence may portray appellant as a "thief and drug addict," it is not likely that such a portrayal would have an irrational effect on the jury, especially because appellant was charged with the much more heinous crime of beating someone to death with a baseball bat. The evidence of the stolen truck and the cocaine use took very little time to develop and did not distract the jury from the charged offense for any significant period of time during the trial. And, finally, the State had a great need for the evidence of the stolen truck to corroborate appellant's confession. Admittedly, the State's need for admitting the cocaine use was not as great, but showing appellant's consciousness of guilt was one more factor used in establishing the charged offense. After considering the rule 403

10

factors, we conclude that the trial court did not abuse its discretion in concluding that the probative value of the challenged evidence was not substantially outweighed by the danger of unfair prejudice.

Accordingly, we overrule point of error one.

## LACK OF ANTI-BRIBERY AFFIDAVIT BY MEDICAL EXAMINER

In appellant's second issue on appeal, he contends that "the trial court erred in allowing the medical examiner to testify since a statement of appointment and oath of office was not on file at the time the autopsy was performed and all actions performed by the medical examiner and his officers/employees were void." Specifically, he claims that Dr. Stephen Pustilnik, the Galveston County Medical Examiner, failed to file the anti-bribery affidavit as set out in Article XVI, section 1(b) of the Texas Constitution.[1]

---

[1] Article XVI, section 1 sets out two required oaths:

Sec. 1. (a) All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:

> I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.

TEX. CONST. ART. XVI, § 1(a) (hereinafter the "constitutional oath").

(b) All elected or appointed officers, before taking the Oath or Affirmation of office prescribed by this section and entering upon the duties of office, shall subscribe to the following statement:

At a hearing outside the presence of the jury, and before Dr. Pustilnik testified, the following exchange took place:

> [Defense Counsel: Doctor, I would like to get you to look at an exhibit marked Defendant's Exhibit D for Identification and ask if you could identify that.
>
> [Dr. Pustilnik]: This appears to be the file on---a copy of the file---a copy of the oath and anti-bribery affidavits that should be on file with the County Clerk here in Galveston.
>
> [Defense Counsel]: And that was put on file when?
>
> [Dr. Pustilnik]: August---it was certified---it was filed on August 11th of 2011.
>
> [Defense Counsel]: Okay. And prior to that date did you have an anti-bribery affidavit on file in Galveston County?

---

> I, _____, do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected or as a reward to secure my appointment or confirmation, whichever the case may be, so help me God.

*Id.* § 1(b) (hereinafter the "antibribery oath").

(c) Members of the Legislature, the Secretary of State, and all other elected and appointed state officers shall file the signed statement required by Subsection (b) of this Section with the Secretary of State before taking the Oath or Affirmation of office prescribed by Subsection (a) of this section. All other officers shall retain the signed statement required by Subsection (b) of this section with the official records of the office.

*Id.* § 1(c) (hereinafter the "filing requirement").

12

[Dr. Pustilnik]: On file, no . . . .

Defense counsel then argued that all actions taken by Dr. Pustilnik and his employees were void because the autopsy was performed in October 2007 and the anti-bribery affidavit was not filed until August 11, 2011.

However, Dr. Pustilnik's failure to file his anti-bribery affidavit does not affect his status as a de facto public officer. A de facto officer is one who has the reputation of being an officer and who acts under color of a known and valid appointment, but who has failed to conform to some precedent requirement such as taking an oath, giving a bond, or the like. *Williams v. State*, 588 S.W.2d 593, 595 (Tex. Crim. App. 1979) (citing *Weatherford v. State,* 31 Tex. Crim. 530, 535, 21 S.W. 251, 251 (Tex. Crim. App. 1893)); *Delamora v. State,* 128 S.W.3d 344, 357 (Tex. App.—Austin 2004, pet. ref'd). Here, there is evidence in the record that Dr. Pustilnik was acting under the color of authority as the medical examiner. *See id.* He testified that he had been a medical examiner since 2001, or for six years before conducting the autopsy involved in this case. *See Ex parte Grundy*, 110 Tex. Crim. 367, 368–69, 8 S.W.2d 677, 677 (Tex. Crim. App. 1928) (validating acts of assistant prosecuting attorney who failed to take oath of office).

Further, the evidence shows only that Dr. Pustilnik did not file the affidavit; it does not show that he failed to take the required oaths. The fact that the anti-bribery oath was not filed is not sufficient to render his actions void. The failure to

13

file the oath with the Secretary of State does not vitiate the oath or deprive the official of the authority to act. *Soderman v. State*, 915 S.W.2d 605, 612 (Tex. App.—Houston [14th Dist.] 1996, writ ref'd).

Finally, appellant also argued that Dr. Pustilnik's testimony should be excluded under article 38.22 of the Code of Criminal Procedure because it was taken in violation of the Constitution. However, there is no evidence of a causal connection between the medical examiner not having filed the anti-bribery statement and his testimony concerning Lacy's cause of death. Absent evidence of a causal connection, the medical examiner's testimony was not excludable under article 38.23(a). *See Roquemore v. State*, 60 S.W.3d 862, 870 (Tex. Crim. App. 2001); *Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000) (the "plain language" of article 38.23(a) does not require exclusion of evidence when no "ordinary person" would consider the evidence to have been obtained in violation of the law); *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) (ordinary meaning of "obtained" does not extend to remote causal relationships).

Accordingly, we overrule point of error two.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).